IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

HYDE PARK COMPANY, LLC, a New Mexico
limited liability company,

                Plaintiff,

v.                                                    CIV. No. 98-821 JP/LCS

GREATER CALLECITA NEIGHBORHOOD ASSOCIATION
a New Mexico non-profit corporation, FREDERICK M. ROWE,
RICHARD FOLKS, PATTI BUSHEE, LARRY DELGADO
and FRANK MONTAÑO,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

On September 11, 1998, Defendants Patti Bushnee, Larry Delgado, and Frank Montaño ("City Defendants") filed "City of Santa Fe Defendants' Motion to Dismiss" (Doc. No. 7) seeking to dismiss under Fed. R. Civ. P. 12(b)(6) Hyde Park Company's LLC's ("Hyde Park") claims based on 42 U.S.C. § 1983 for violation of procedural and substantive due process rights and conspiracy to violate civil rights. Also on September 11, 1998, Defendants Greater Callecita Neighborhood Association, Frederick M. Rowe, and Richard Folks ("Non-City Defendants") filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6) seeking to dismiss all of Hyde Park's claims. After thoroughly reviewing the briefs and the applicable case law, and holding a motion hearing on November 16, 1998, I conclude that the City Defendants' motion should be granted and that the Non-City Defendants' motion should be granted in part.

## I. LEGAL STANDARD

In considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), this court must liberally construe the pleadings, accept as true all factual allegations in the complaint, and draw all reasonable inferences in the plaintiff's favor. *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984). A claim may only be dismissed if it appears to a certainty that the claimants can prove no set of facts in support of their claims which would entitle them to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

## II. BACKGROUND

Hyde Park owns certain real property ("the property") located in Santa Fe, New Mexico. Hyde Park initially sought to develop the property in September, 1994, when Hyde Park submitted to the City of Santa Fe a request for preliminary approval of an application for subdivision. Non-City Defendants opposed Hyde Park's development of the property.

The process by which a subdivision application in Santa Fe is granted or denied is governed by a myriad of New Mexico state laws and Santa Fe City ordinances. The City of Santa Fe has the authority to approve subdivision of lands under N.M. STAT. ANN. § 3-20-7 (Repl. Pamp. 1995). Acting under N.M. STAT. ANN. § 3-20-7B(4), the City Council adopted regulations for the subdivision of land, which are codified in Santa Fe City Code 1987 ("SFCC"). As a municipality, the City Council of the City of Santa Fe is a planning authority with the power to establish a planning commission and delegate to it the authority to enforce laws relating to platting. N.M. STAT. ANN. § 3-19-1 (Repl. Pamp. 1995). When delegating its authority to the planning commission, the City Council of Santa Fe may retain as much power and authority as it

desires. N.M. STAT. ANN. § 3-19-1(C) (Repl. Pamp. 1995).

The City Council created a planning commission ("Commission") and delegated "its authority for planning . . . and for approving subdivision plats . . . to the planning commission, except for those powers retained by the governing body in the Santa Fe City Code." SFCC § 14-2.2. The Santa Fe City Code provides for review of the Commission's actions in SFCC § 14-7.5(A), which states that the governing body has thirty days from the time of "any final order or determination by the planning commission," in which to decide whether to review the Commission's decision. In making a review, "the governing body may reverse or affirm, wholly or partly, or may modify the order, requirement, decision or determination . . . and . . . shall have in addition to all other municipal authority, that authority of the planning commission." SFCC § 14-7.5(B).

Finally, N.M. STAT. ANN. § 3-20-7E (Repl. Pamp. 1995) states that the "planning authority of a municipality shall approve or disapprove of a plat within thirty-five days of the day of final submission of the plat," or "the plat is deemed to be approved and upon demand the planning authority shall issue a certificate approving the plat." The Santa Fe City Code states, "[t]he planning commission shall approve or disapprove the final plat within thirty-five days (35) from the date of meeting at which it first considers such plat, which date shall be considered as the date of final submission of the final plat . . . ." SFCC § 14-82.3D.

The Commission granted approval of the first preliminary application ("first preliminary application") on May 4, 1995. Although there is no provision in the Santa Fe City Code allowing for appeals of preliminary plat approvals, Defendants Rowe, Folks, and others filed a document with the City Council purporting to appeal the Commission's decision. While the appeal was

3

pending before the City Council, Defendants Rowe and Folks met privately with Defendants Bushee, Delgado, and Montaño about the first preliminary application. Based on information received in these private meetings, Defendants Bushee, Delgado and Montaño decided to deny the first preliminary application. On August 30, 1995, the City Council reversed the Commission's decision to approve the first preliminary application.

While Hyde Park was developing a second preliminary application, Jane Burke, an officer or director of the Greater Callecita Neighborhood Association, met with the president of the bank that was Hyde Park's lender for the development project. Ms. Burke attempted to persuade the president not to lend Hyde Park money for the project.

On August 1, 1996, the Commission approved the second preliminary application, and Defendant Rowe appealed that decision to the City Council. In reliance on the Commission's approval of the second preliminary application, Hyde Park spent more than $30,000.00 preparing the final plat. On November 8, 1996, Hyde Park made its final submission of the plat ("final application"). Every City department having the duty to review the final application for compliance with applicable regulations indicated that the final application was in full compliance.

During this time, Defendant Bushee expressed her opposition to Hyde Park's application and stated that she intended to raise as many issues as possible to delay the processing of the application. On April 2, 1997, Defendant Bushee filed her own appeal of the City Manager's action regarding the appeal by Defendant Rowe and others of the Commission's approval of the second preliminary application.

On April 3, 1997, the Commission held a public hearing on the final application. Before this hearing commenced, however, Hyde Park demanded that the Commission issue a certificate

4

of approval of the application under N.M. STAT. ANN. § 3-20-7E because the Commission had failed to act within thirty-five days after November 8, 1996, the date on which Hyde Park submitted its final application.

The Commission refused to issue the certificate of approval and went ahead with its April 3, 1997, hearing, after which the Commission granted approval of the final application. During the City Council's regularly scheduled meeting of April 30, 1997, Hyde Park repeated its demand for a certificate of approval under N.M. STAT. ANN. § 3-20-7E. The City Council denied this request and instead voted to review the application at a public hearing on May 28, 1997.[1]

On May 28, 1997, Hyde Park appeared at the City Council's public hearing and requested that Councilor Patti Bushee recuse because of her lack of impartiality and the appearance of bias. Hyde Park contended that Councilor Bushee should recuse because she filed an appeal in the case while it was still pending before the Commission, pressured Commission members to delay considering the application until Santa Fe had passed new storm drainage regulations, and strategized with opponents of the application on how to gain support among other City Council members. Hyde Park's request for Councilor Bushee's recusal was denied, and the City Council voted 5-2 to deny final plat approval.

Hyde Park then filed this action in state court, and on July 8, 1998, the City Defendants

---

[1] In a related case filed in state district court before the May 28, 1997, hearing took place, Hyde Park obtained an *ex parte* writ of mandamus compelling the City Council to grant automatic approval of Hyde Park's application under § 3-20-7E. On May 21, 1997, after a hearing, Judge Pfeffer of the First Judicial District dissolved the writ. Hyde Park then appealed and the New Mexico Court of Appeals affirmed Judge Pfeffer's decision on the ground that mandamus was not warranted because other relief was available to Hyde Park. *State of New Mexico ex rel. Hyde Park Comp., LLC, v. The Planning Commission of the City of Santa Fe and the City Council of the City of Santa Fe, et al.*, 1998 NMCA-146, Vol. 37, No. 46, SBB (November 12, 1998).

removed Hyde Park's action to federal court.

**III   DISCUSSION**

City Defendants' motion to dismiss is directed at the fourth and fifth counts of Hyde Park's "First Amended Complaint for Damages for Prima Facie Tort, Malicious Abuse of Process, Civil Conspiracy, Violation of Civil Rights and Conspiracy to Violate Civil Rights, Punitive Damages and Attorneys Fees," filed in federal court on August 18, 1998; Non-City Defendants' motion to dismiss is directed at all counts, except the fourth count, of Hyde Park's complaint.  In the fourth count, brought under 42 U.S.C. § 1983, Hyde Park alleges that City Defendants denied Hyde Park's procedural and substantive due process rights under the New Mexico Constitution and the Fourteenth Amendment to the United States Constitution.  Count Five, which is also brought under § 1983, alleges that Non-City Defendants conspired with Defendant Bushee to violate Hyde Park's procedural and substantive due process rights and that City Defendants also conspired to violate Hyde Park's procedural and substantive due process rights.

City Defendants and Non-City Defendants seek dismissal based on several grounds. Because I conclude that Hyde Park has no protected property right in its unapproved application, which defeats Hyde Park's claims of deprivation of procedural and substantive due process rights and conspiracy to violate civil rights under § 1983, I do not address the Defendants' remaining arguments.

A. Procedural Due Process

To prevail on its procedural due process claim, Hyde Park must prove that City Defendants deprived it of a liberty or property interest protected by the Fourteenth Amendment. *Casias v. City of Raton*, 738 F.2d 392, 394 (10th Cir. 1984) (citing *Board of Regents of State College v. Roth*, 408 U.S. 564, 569-70 (1972)). "A property interest protected by the due process clause results from a legitimate claim of entitlement created and defined by 'existing rules or understandings that stem from an independent source such as state law.'" *Jacobs, Visconsi, & Jacobs, Co. v. City of Lawrence, Kansas*, 927 F.2d 1111, 1116 (10th Cir. 1991) (citing *Roth*, 408 U.S. at 577). Thus, whether Hyde Park possessed such a property interest depends on whether Hyde Park had a legitimate claim of entitlement based on New Mexico state law.

Hyde Park essentially argues that it had a property interest protected by the due process clause can for four reasons: (1) the issuance of the Commission's written approval of the application, together with a substantial change in position in reliance, created a vested right; (2) the failure of both the Commission and the City Council to comply with N.M. STAT. ANN. § 3-20-7E resulted in Hyde Park's automatic right to have the final application approved; (3) the City Council did not have the authority to deny Hyde Park's final application; and (4) the quasi-judicial nature of the City Council hearing created a protected property right in Hyde Park's application.

> 1. *The Commission's issuance of written approval of Hyde Park's final application, together with Hyde Park's substantial change of position in reliance, did not create a vested right.*

City Defendants argue that no property interest is at stake in Hyde Park's final application because the pendency of a subdivision application does not create any vested rights. In support of its position, City Defendants cite to *Brazos Land, Inc. v. Board of County Com'rs of Rio Arriba*

7

*County*, 115 N.M. 168, 170, 848 P.2d 1095, 1097 (Ct. App. 1993) (holding that plaintiff had no vested right in subdivision plat application because plaintiff had not received actual approval or assurance of approval from the Board of County Commissioners, and the plaintiff had not shown substantial reliance or change in position) and *Mandel v. City of Santa Fe*, 119 N.M. 685, 687, 894 P.2d 1041, 1043 (Ct.App.) ("Since the project had not been approved, [plaintiff ] had no vested right in having the less restrictive height requirement applied to his project."), *cert denied*, 119 N.M. 771, 895 P.2d 671 (1995).

In arguing that it had a vested property right based on the Commission's issuance of written approval in regard to which Hyde Park changed its position in reliance on that approval, Hyde Park also relies on New Mexico case law. *See Santa Fe Trail Ranch II, Inc. v. Bd. of County Com'rs of San Miguel County*, 125 N.M. 360, 961 P.2d 785, 1998-NMCA-099 (citing earlier New Mexico case law and finding that plaintiff developer had no vested rights in its application when the County had not approved it); *Brazos*, 115 N.M. 168, 848 P.2d 1095; *In the Matter of Sundance Mountain Ranches Inc.*, 107 N.M. 192, 194, 754 P.2d 1211, 1213 (Ct. App.) ("Generally, issuance of written approval for a proposed subdivision or building permit, together with a substantial change in position in reliance thereupon, is required before vested rights arise."), *cert denied*, 107 N.M. 267, 775 P.2d 605 (1988).

Because Hyde Park received preliminary and final plat approval from the Commission, Hyde Park reasons that it had a vested property right in its application. New Mexico law does not support that conclusion. Under New Mexico law, a two step analysis determines whether a vested right exists. "First, there must be approval by the regulatory body, and second, there must be a substantial change in position in reliance thereon." *Brazos*, 115 N.M. at 170, 848 P.2d at

8

1097. Hyde Park failed to satisfy the first step of the vested rights analysis because it never actually received approval from the City Council, which is the regulatory body with the ultimate authority to grant final approval of Hyde Park's application, and because Hyde Park never received any assurance from the City Council that its application would be approved. *See Santa Fe Trail Ranch II,* 125 N.M. 360, 961 P.2d 785, 1998-NMCA-099; *Mandel*, 119 N.M. at 687, 894 P.2d at 1043.

Hyde Park seems to insist however, that the Commission, not the City Council, is the body with the authority to grant final approval of Hyde Park's application. This conclusion runs contrary to New Mexico statutory and case law, as well as the Santa Fe City Code. *See Mitchell v. Hedden*, 94 N.M. 348, 349, 610 P.2d 752, 753 (1980) (holding that the planning authority in the City of Santa Fe is the City Council and stating, "[u]ltimate planning decisions within the City rest with the City Council"). Under New Mexico statutory law, Santa Fe is authorized to create a Commission while still retaining "as much [ ] power, authority, jurisdiction and duty as it desires" regarding platting and planning. N.M. STAT. ANN. § 3-19-1(C) (1995 Repl. Pamp.). Here, the City of Santa Fe created the Commission, but specifically reserved for the City Council the authority to review "any final order or determination by the planning commission," SFCC § 14-7.5(A), and to "reverse or affirm, wholly or partly, or [to] modify the order, requirement, decision, or determination . . ." SFCC § 14-7.5(B). Thus, Hyde Park never received final approval from the governing body which had the authority to grant it.

> 2. *The Commission and the City Council complied with N.M. STAT. ANN. § 3-20-7E, which negates Hyde Park's argument that it had a right to automatic approval of its final application.*

Hyde Park contends that both the Commission and the City Council failed to comply with N.M. STAT. ANN. § 3-20-7E, which requires a municipality's planning authority to approve or disapprove a plat within thirty-five days of final submission of the plat, and this resulted in an automatic right of approval of the final application. Hyde Park's argument is not persuasive.

Judge Pfeffer of the First Judicial District already decided this issue when he quashed Hyde Park's writ of mandamus in a related case. *See* Transcript of May 21, 1997 hearing at 78, *State of New Mexico ex rel. Hyde Park Comp., LLC, v. The Planning Commission of the City of Santa Fe and the City Council of the City of Santa Fe, et al.*, (1st Judicial District) (No. 97-1427(C)). Although the law of the case doctrine does not apply to this issue because Judge Pfeffer's decision was in a separately filed action, I concur with his conclusion on the merits.

Section 3-20-7E requires the "planning authority" of the City of Santa Fe to "approve or disapprove of a plat within thirty-five days of the day of final submission of the plat." The Santa Fe City Codes states:

> [t]he planning commission shall approve or disapprove the final plat within thirty-five (35) days from the date of meeting at which it first considers such plat, which date shall be considered as the date of final submission of the final plat.

SFCC § 14-82.3D. In my November 19, 1998, Order, I ruled that "the day of final submission of the plat," as discussed in N.M. STAT. ANN. § 3-20-7E is defined by the Santa Fe City Code, SFCC § 14-82.3D, to be the day on which the planning commission first considers an application.

Because the Commission approved Hyde Park's final application on April 3, 1997, the day of the meeting at which the Commission first considered it, the Commission did not violate § 3-20-7E.

Nor did the City Council's actions violate § 3-20-7E. On April 30, 1997, the City Council decided to review the Commission's determination. This was within the thirty day period the City Council had under SFCC § 14-7.5(A) to decide whether to exercise its review powers. Once the City Council made the decision to review Hyde Park's application, the City Council had "that authority of the planning commission." SFCC § 14-7.5(B). Since under § 3-20-7E the Commission had thirty-five days from "the date of meeting at which it first considers such plat" to approve or disapprove of the plat application, the City Council likewise had thirty-five days from the date of meeting at which the City Council first considered Hyde Park's final application. Because the City Council denied Hyde Park's final application twenty-eight days later on May 28, 1997, the date of the first meeting at which it considered the application, the City Council's actions complied with § 3-20-7E.

To conclude, as Hyde Park seems to argue I should, Response at 9, that the City Council had only thirty-five days in which to decide an appeal from the time Hyde Park made its final submission to the Commission would render the City Council's appeal powers under SFCC § 14-7.5 virtually meaningless. Such an interpretation would mean that the City Council's thirty day period for deciding whether to review a decision of the Commission would run concurrently with the thirty-five day period within which the Commission must render a decision on an application under § 3-20-7E. Under this interpretation of the statute, the City Council's thirty day authority to decide whether to review a decision of the Commission could expire before the Commission has to make its decision. Section 3-20-7E should not be construed in a way that would result in

11

an absurdity.

Hyde Park's alternative argument, that City Council had only thirty-five days to act on Hyde Park's application after the Commission approved it, is equally illogical. (Response at 9) This interpretation would essentially negate the separate ordinance giving the City Council an initial thirty days in which to decide whether to review a Commission decision.

        *3.       The City Council had the authority to deny Hyde Park's final application.*

In its complaint and at the November 16, 1998, hearing, Hyde Park relied on *El Dorado at Santa Fe, Inc v. Bd. of County Com'rs of the County of Santa Fe*, 89 N.M. 313, 551 P.2d 1360 (1976) to argue that the City Council had no discretion to deny Hyde Park's final application. In *El Dorado*, the plaintiff sought an order requiring the Santa Fe Board of County Commissioners to approve plaintiff's subdivision application. The New Mexico Supreme Court found for the plaintiff and concluded that under the applicable statutes "nothing remained for the Board to do but the ministerial act of endorsing their approval on the plats which had complied with all statutory requirements." *Id*. at 318, 551 P.2d at 1365.

In this case, however, the applicable statutes and regulations state that the City Council may exercise its power under the Santa Fe City Code to "reverse or affirm, wholly or partly, or [to] modify the order, requirement, decision, or determination" of the Commission. SFCC §§ 14-7.5(B). Thus, the City Council's approval of Hyde Park's plat application was not, as it was in *El Dorado*, a ministerial act that the City Council had a duty to perform once Hyde Park satisfied the statutory prerequisites. *See also Bateson v. Geisse*, 857 F.2d 1300, 1305 (9th Cir. 1988) (holding that plaintiff had no protected property interest in minor plat application when the applicable municipal ordinance specifically authorized "the City Council to approve, conditionally approve or

reject a minor plat.").

>    4.   *The quasi-judicial nature of the City Council hearing did not create a protected property interest in Hyde Park's final application.*

Finally, Hyde Park argues that because the May 28, 1997, City Council hearing "was a quasi-judicial proceeding" it had to be "conducted as to adhere to fundamental principles of justice and procedural due process." (Response at 9) This argument is meritless. "Although property interests are defined by state law, we believe that the classification by the state of the particular procedure due the applicant is insufficient, in itself, to bring that interest within the protection of the Due Process Clause." *Jacobs*, 927 F.2d 1111, 1117 (rejecting plaintiff's claim of a due process interest based on the quasi-judicial nature of the rezoning process under state law).

Under New Mexico law, Hyde Park had no vested property right in its unapproved subdivision application that would give rise to any procedural due process protection.

B.   Substantive Due Process

"Authority in this circuit is unclear on what interest is required to trigger substantive due process guarantees." *Jacobs,Visconsi & Jacobs, Co. v. City of Lawrence, Kansas*, 927 F.2d 1111, 1119 (10th Cir. 1991); *Norton v. Village of Corrales*, 103 F.3d 928, 931 (10th Cir. 1996) (quoting *Jacobs* that "[a]uthority in this circuit is unclear on what interest is required to trigger substantive due process guarantees."); *Wal-Mart Stores, Inc. v. City of Cheyenne*, No. 96-8080, 1997 WL 446896, *2 n. 4 (10th Cir. August 7, 1997) (quoting *Jacobs* that "[a]uthority in this circuit is unclear on what interest is required to trigger substantive due process guarantees.")). While some Tenth Circuit opinions say that the plaintiff must allege a liberty or property interest to which due

13

process guarantees can attach, *see e.g. Harris v. Blake*, 798 F.2d 419, 424 (10th Cir. 1986), *cert denied*, 479 U.S. 1033 (1987), other Tenth Circuit law states that the "[r]ights of substantive due process are founded not upon state provisions but upon deeply rooted notions of fundamental personal interests derived from the Constitution." *Mangels v. Pena*, 789 F.2d 836, 839 (10th Cir. 1986). Under either inquiry, Hyde Park's substantive due process claim fails because Hyde Park has asserted no property interest protected by substantive due process guarantees.

Recent Tenth Circuit cases suggest that a plaintiff seeking to assert a substantive due process claim involving land-use regulation must allege a property interest resulting from a legitimate claim of entitlement under state law. *See Norton*, 103 F.3d at 932 (examining state law to determine whether defendants had discretion to deny plaintiff's plat application); *see also Biser v. Town of Bel Air*, 991 F.2d 100, 103-104 (4th Cir.) (In order for plaintiff in zoning dispute "to state a substantive due process claim, he must first demonstrate that he possesses a 'cognizable property interest, rooted in state law.'"), *cert denied*, 510 U.S. 864 (1993). In *Norton*, the Tenth Circuit stated, "[i]n the entitlement analysis nearly all courts focus on whether there is discretion in the defendants to deny a zoning or other application filed by the plaintiffs." *Norton*, 103 F.3d at 931; *see Biser*, 991 F.2d at 104 (in applying entitlement standard, court looks to agency's discretion to deny zoning permit). Because this analysis focuses on "the *degree of official discretion* and not on the probability of its favorable exercise, the question of whether an applicant has a property interest will normally be a matter of law for the court." *Norton*, 103 F.3d at 931-32 (citing *RRI Realty Corp. v. Incorporated Village of Southampton*, 870 F.2d 911, 918 (2d Cir.), *cert denied*, 493 U.S. 893 (1989)) (emphasis added).

In *Norton*, the Tenth Circuit considered the same statute at issue here, N.M. STAT. ANN. §

14

3-20-7E, and found that it imbued the planning authority with the discretion to deny approval of a plat. *Id.* at 932. *See also Wal-Mart Stores,* 1997 WL 446896, *2 (denying plaintiff's § 1983 substantive due process claim arising from the city's denial of plaintiff's application for a liquor license because the applicable statutes and ordinances did "not state that fulfillment of specified conditions assures approval of an application.").

In this case, the City Council retained unqualified discretion to deny Hyde Park's final application under SFCC § 14-7.5(B) and N.M. STAT. ANN. § 3-20-7E, nonwithstanding the Commission's approval. Moreover, even if the City had violated N.M. STAT. ANN. § 3-20-7E by failing to act on Hyde Park's application within thirty-five days, this failure to comply with state law would not give rise to a constitutional claim to approval of the permit. *Norton*, 103 F.3d at 932 ("If defendant had the discretion to deny plaintiffs' subdivision applications during the thirty-five day period" under § 3-20-7E, the viability of plaintiffs' due process claims is "not enhanced by defendants' failure to act within that time.").

Hyde Park's asserted property interest would also fail to invoke substantive due process protection under a fundamental rights analysis. *See Mangel,* 789 F.2d 836; *see also Regents of University of Michigan v. Ewing*, 474 U.S. 214, 229 (1985) ("[S]ubstantive due process rights are created only by the Constitution."). Hyde Park's interest in approval of its subdivision application, which the regulating body with ultimate authority never approved, "bears little resemblance to the fundamental interests that previously have been viewed as implicitly protected by the Constitution." *Ewing*, 474 U.S. at 229-30; *see also Harrah Independent School District v. Martin*, 474 U.S. 194, 198 (1978).

The City Defendants' Motion to Dismiss Hyde Park's § 1983 substantive due process

15

claims also should be granted.

C.  Conspiracy to Violate Civil Rights

Hyde Park alleges that all of the Defendants are liable under 42 U.S.C. § 1983 for conspiring to violate Hyde Park's civil rights to procedural and substantive due process. "A 1983 conspiracy claim may arise when a private actor conspires with [a] state actor to deprive a person of a constitutional right under color of state law." *Dixon v. City of Lawton, Okl.*, 898 F.2d 1443, 1449 n.6 (10th Cir. 1990) (citing *Dennis v. Sparks*, 449 U.S. 24, 29, 101 S.Ct. 183, 187, 66 L.Ed.2d 185 (1980)). However, "to recover under a § 1983 conspiracy theory, a plaintiff must plead and prove not only a conspiracy, but also an actual deprivation of rights . . . ." *Id*. Because I have concluded there was no deprivation of Hyde Park's procedural and substantive due process rights, Hyde Park's conspiracy to violate civil rights claim should also be dismissed with prejudice. *Id.* ("[T]he essence of a § 1983 claim is the deprivation of the right rather than the conspiracy.").

D.  Remand to State Court

Hyde Park's remaining claims are state law claims brought against Non-City Defendants. "[T]he most common response to a pretrial disposition of federal claims has been to dismiss the state law claim or claims without prejudice–that is the seminal teaching of *United Mine Workers v. Gibbs*, 383 U.S. 715 [ ](1966) . . . ." *Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995); *see* 28 U.S.C. § 1367(c)(3) (federal district court may decline to exercise supplemental jurisdiction over state law claims if the district court has dismissed all claims over which it has original jurisdiction). Dismissal of state law claims is dictated by concerns over "judicial economy, fairness, convenience, and comity." *Ball*, 54 F.3d at 669. Only when there are compelling reasons to the

contrary should a federal district court refrain from dismissing the state law claims. *See id*.

There are compelling reasons why this court should dismiss Hyde Park's remaining state law claims. Resolution of this case involves the interpretation of state statutes, local ordinances, and New Mexico case law.

IT IS THEREFORE ORDERED that:

1.) "City of Santa Fe Defendants' Motion to Dismiss" (Doc. No. 7) is GRANTED; and

2.) Non-City Defendants "Motion to Dismiss" (Doc. No. 12) is GRANTED in part with respect to Count V of Hyde Park's complaint alleging civil conspiracy under 42 U.S.C. § 1983.

_____
**UNITED STATES DISTRICT JUDGE**